UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: ENFORCEMENT OF THIRD-PARTY SUBPOENA OF INSIGHT VENTURE MANAGEMENT, LLC d/b/a INSIGHT VENTURE PARTNERS | Misc. Case No. _____ (Related to Civil Case No. 2:21-cv-09552-CAS (SKx) (C.D. Cal.)) |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' PETITION FOR AN ORDER TO SHOW CAUSE

Plaintiffs respectfully move this Court, pursuant to Federal Rule of Civil Procedure 45(d)(2)(B)(i), for an Order directing Insight Venture Management, LLC d/b/a Insight Venture Partners ("Insight Venture") to appear and show cause why it should not produce documents responsive to a document subpoena served on Insight Venture in this District on June 24, 2022 (the "Subpoena," Exhibit 1 to the Declaration of Richard M. Koehl submitted herewith ("Koehl Decl.")). Despite several meet and confer discussions and correspondence, Insight Venture has refused to produce the requested documents to Plaintiffs and appears prepared to "return or destroy" documents sought by the Subpoena, at Defendants' request, rather than produce them to Plaintiffs. Judicial intervention is therefore appropriate and necessary at this time.

## I.    FACTUAL BACKGROUND

**The Underlying Action**

Plaintiff Suzhou Angela Online Game Technology Co., Ltd. ("Angela Game") is an independent game developer, and Plaintiff Imperium Interactive Entertainment Limited ("IE") is Angela Game's indirect parent company. After years of hard work by a team of software developers, Plaintiffs launched their multi-player online game *Myth of Empires*. In *Myth of Empires*, players

1

build fortresses, lead armies in massive battles, siege enemy cities, and establish their own empire while fighting to survive and earn their place in a war-torn world. Upon its release, *Myth of Empires* was instantly successful and garnered substantial favorable publicity, excellent reviews and ratings, and considerable social media buzz.

Defendants Snail Games USA Inc. ("Snail USA") and Wildcard Properties, LLC ("Studio Wildcard") claim to be the developers and owners of a competing videogame, *Ark: Survival Evolved*. After the successful release of *Myth of Empires*, Defendants sent "takedown" letters invoking the Digital Millennium Copyright Act, 17 U.S.C. § 512, on the purported ground that Plaintiffs' *Myth of Empires* allegedly infringed the copyright of Defendants' *Ark: Survival Evolved* game. On December 9, 2021, Plaintiffs filed suit in the Central District of California to clear their name and seek damages for Defendants' wrongful allegations of copyright infringement. *See* 17 U.S.C. § 512(f). Defendants have answered and counterclaimed for copyright infringement of *Ark: Survival Evolved* and have also alleged trade secret misappropriation.

**Insight Venture Previously Sued Defendant Studio Wildcard, LLC and Defendants' Key Witness Jeremy Stieglitz Over Ownership of *Ark: Survival Evolved* and Defendant Snail USA's Investment in Studio Wildcard**

Defendants' key witness, Jeremy Stieglitz, and Defendants are no strangers to litigation over *Ark: Survival Evolved*. Mr. Stieglitz and Defendant Wildcard Properties, LLC d/b/a Studio Wildcard were defendants in litigation brought by Insight Venture in New York and Florida state courts in or about December 2015 over the ownership of *Ark: Survival Evolved*.

According to Insight Venture's New York complaint, Mr. Stieglitz had "expressly and unconditionally agreed" to give Insight Venture (i) a 20% share of any direct or indirect interest in any future ventures relating "to video, online and other software-based games in any medium" over a five-year period, and (ii) a "right of first refusal on any remaining interest" in such ventures. Koehl Decl., Ex. 2 at 1–2, ¶2. Insight Venture further alleged that:

2

3.      Stieglitz has flagrantly breached both promises, working with his wife (using her maiden name) to hide his association with Studio Wildcard and deny Insight its rightful ownership interest and resulting profits. Within months of leaving Trendy, Stieglitz teamed up with others-including several former Trendy employees-to form Studio Wildcard. Earlier this year, Studio Wildcard launched *ARK: Survival Evolved* and it has been a resounding success. . . .

4.      Despite his clear contractual obligations, Stieglitz never disclosed to Insight that he owned an interest and was involved with Studio Wildcard. Instead, he and Browning (who makes cupcakes, not software) placed his holdings in Browning's name and had her serve as a manager of Studio Wildcard. There is no legitimate explanation for this. The reason they engaged in this subterfuge is obvious: they thought they could hide Stieglitz's involvement and deny Insight its rightful ownership interest in Studio Wildcard. Despite repeated requests, Stieglitz has not honored his promise to provide Insight its 20% share of his interest in Studio Wildcard—he and Browning have just decided to keep it for themselves.

5.      Stieglitz also breached his obligation to provide to Insight a right of first refusal on the other 80% of his interest in Studio Wildcard. Earlier this month, according to filings with the Florida Secretary of State, the equity holders of Studio Wildcard sold some or all of their equity to an affiliate of Snail Games USA, Inc. for an undisclosed amount of "cash and deferred consideration." At no time did Stieglitz offer a right of first refusal to Insight, as he was expressly required to do.

6.      In short, Stieglitz took Insight's money, developed a new game in violation of all of his contractual obligations, and then together with his wife and Studio Wildcard schemed to deny Insight the very rights that he had promised in his new business. This misconduct is egregious and inexcusable. Accordingly, Insight has been left with no choice but to file this lawsuit to obtain what Stieglitz promised, and to seek compensatory and punitive damages for Stieglitz's, Browning's and Studio Wildcard's wrongdoing.

*Id.* at 2–3. Accordingly, Insight Venture alleged several claims against Mr. Stieglitz, including breach of contract, conversion, and breach of the covenant of good faith and fair dealing, and Insight Venture further alleged that Defendant Studio Wildcard had tortiously interfered with Mr. Stieglitz's contracts with Insight Venture. *See id.* at 11–14. Insight Venture sought specific performance as well as compensatory, consequential, and punitive damages. *See id.* at 14. After Mr. Stieglitz moved to dismiss the New York litigation on the grounds that the earlier-filed Florida action took precedence, the New York state court closed the New York case, *see* Koehl Decl., Ex. 3, but the Florida case continued. Ultimately, according to contemporary news accounts, Mr.

3

Stieglitz paid $40 million to settle the Florida action. *See* A. Clark, "Developer of 'Ark: Survival Evolved' pays $40 million to settle lawsuit with Trendy," *The Gainesville Sun* (May 11, 2016), *available at* https://www.gainesville.com/story/news/2016/05/11/developer-of-ark-survival-evolved-pays-40-million-to-settle-lawsuit-with-trendy/30428302007/ (Koehl Decl., Ex. 4).

**Plaintiffs' Subpoena on Insight Venture**

Following up on earlier discussions, on June 24, 2022, former counsel for Plaintiffs served the Subpoena seeking documents on the Florida case on counsel for Insight Venture. *See* Koehl Decl., Exs. 1, 5. As issued, the Subpoena was returnable on July 22, 2022. *See id.*, Ex. 1. On July 1, 2022, counsel for Insight Venture sought until August 15, 2022 to respond to the Subpoena. *See id.*, Ex. 6. Plaintiffs have not received any written objections from Insight Venture, Mr. Stieglitz, or Defendants in response to the Subpoena.

**Efforts to Resolve This Dispute and The Need for This Court's Intervention**

Following Plaintiffs' retention of new counsel in July, current counsel for Plaintiffs contacted counsel for Insight Venture to inquire when Insight Venture would provide a response to Plaintiffs' Subpoena. On August 10, 2022, and August 24, 2022, counsel for Insight Venture met and conferred with counsel for Plaintiffs. Insight Venture informed Plaintiffs that counsel for Defendants had asked Insight Venture in writing to "return or destroy" the documents sought by Plaintiffs' Subpoena:

> ***To the extent Insight has not returned or destroyed*** all Confidential or Highly Confidential Discovery Materials produced by Wildcard or Mr. Stieglitz pursuant to a prior request for it to do so, we hereby make such request on behalf of Wildcard and Mr. Stieglitz. ***Please confirm that all such documents have been (or will be) returned or destroyed.***

Koehl Decl., Ex. 7 at 2 (emphases added). Insight Venture proposed to Plaintiffs that it be allowed to "return" the documents Plaintiffs seek, not to Plaintiffs, but to Mr. Stieglitz.

Plaintiffs subpoenaed Mr. Stieglitz to determine whether he would produce to Plaintiffs any such documents that Insight Venture "returned" to him. On August 31, 2022, Mr. Stieglitz's objections to his subpoena indicated that he would not produce any such "returned" documents. *See* Koehl Decl., Ex. 8 (stating Mr. Stieglitz's objections and response to Request No. 23). In light of the imminent risk of suppression or even potential destruction of the documents sought by Plaintiffs' Subpoena of Insight Venture, Plaintiffs advised Insight Venture to maintain the Subpoenaed documents in this District so that Plaintiffs could seek appropriate relief. *See* Koehl Decl., Ex. 9.

## II.     SUMMARY OF THE ARGUMENT

Plaintiffs seek highly relevant and discoverable documents that exist in this District. Plaintiffs do not seek Insight Venture's work product or privileged materials. Insight Venture is understood to have already gathered these non-privileged documents from its files. An Order from this Court will result in their production. Permitting Insight Venture to instead "return" to Mr. Stieglitz the documents that are responsive to the Subpoena raises substantial risks that those documents will be suppressed or possibly even destroyed. There is no good reason to permit that course of conduct when neither Insight Venture, nor Mr. Stieglitz, nor Defendants have served any objections to the Subpoena nor sought any protective order against their release to Plaintiffs. The responsive, non-privileged documents sought by the Subpoena should be produced.

## III.     ARGUMENT

### A.     The Subpoenaed Documents Are Relevant and Discoverable

Fed. R. Civ. P. 26(b)(1) permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Plaintiffs seek discovery from Insight Venture concerning its Florida litigation against Mr. Stieglitz and Defendant Studio Wildcard, including court pleadings, depositions or other discovery taken or received in the Florida action, correspondence sent or received in the Florida action, and the reported $40 million

settlement agreement over *Ark: Survival Evolved*. *See* Koehl Decl., Ex. 1. These documents are relevant to the claims and defenses in the underlying action, and proportional to the needs of the case, for at least the following reasons:

*First*, the documents are likely to provide evidence concerning the video game development process, specifically including the development of Defendants' game *Ark: Survival Evolved*—the video game from which Plaintiffs contend Defendants copied the *Myth of Empires* source code.

*Second*, the documents are likely to provide evidence relevant to the value of the allegedly infringed copyrights in the underlying action.

*Third*, the nature of the corporate relationships between Defendant Snail USA and Defendant Studio Wildcard (and their respective purported rights over *Ark: Survival Evolved*) and relative involvement in wrongdoing against Plaintiffs are as murky in this litigation as they were in the previous New York and Florida cases. Insight Venture's New York allegations of "subterfuge," including his work to "hide" Mr. Stieglitz's ownership interest by naming his spouse—"who makes cupcakes, not software"—as a manager of Defendant Studio Wildcard (*see* Koehl Decl., Ex. 2 at 2, ¶ 4), go directly to the alleged authorship and ownership of rights to *Ark: Survival Evolved*. The corporate relationship between Defendant Studio Wildcard and Defendant Snail USA was also at issue in the previous litigation. *See* Koehl Decl., Ex. 2 at 8, ¶ 31 ("Studio Wildcard is a gaming studio shrouded in mystery"); *id.*, Ex. 2 at 10–11, ¶ 40 (concerning Defendant Studio Wildcard's acquisition by Defendant Snail USA). Similar issues are believed to have arisen in the Florida case. *See, e.g.*, Koehl Decl., Ex. 4.

*Fourth*, in this litigation Plaintiffs contend that Defendants materially misrepresented to third party Valve, Inc. ("Valve") that *Myth of Empires* was built using "stolen source code" and

6

further that Defendants materially misrepresented that distribution of *Myth of Empires* infringed Defendants' copyrights. Defendants' initial disclosures identify Mr. Stieglitz as a person with knowledge of the comparisons underlying those allegations; Mr. Stieglitz has submitted several declarations in support of Defendants' allegations in the underlying action; and discovery has revealed that Mr. Stieglitz made similar comments to Valve in emails. *See* Koehl Decl., Ex. 11. Evidence of Mr. Stieglitz's "subterfuge" and other misconduct, as alleged in the Insight Venture litigation, as well as his payment of $40 million to settle those allegations, is pertinent to at least his motive, knowledge, plans, and intent in his material misrepresentations against Plaintiffs. *See, e.g.*, Fed. R. Evid. 404, 405.

### B. Any Objections to Providing the Documents Have Been Waived, and Defendants Lack Any Standing to Object on Relevance Grounds

Neither Insight Venture, Mr. Steiglitz, nor Defendants are believed to have served any written objections in response to Plaintiffs' Subpoena of Insight Venture, nor have any of these parties sought a protective order or moved to quash the Subpoena. Any objections have therefore been waived. *See, e.g.*, *Israel v. Carpenter*, No. No. 95CIV2703DABJCF, 2002 WL 1424594, at *1 (S.D.N.Y. June 28, 2002).

Plaintiffs believe the Subpoenaed documents can be produced to Plaintiffs immediately. Insight Venture is understood to have already gathered and collected the documents sought by the Subpoena for their purported "return" to Mr. Stieglitz. *See, e.g.*, Koehl Decl., Exs. 6, 9. Designation of documents under the Protective Order in the underlying litigation (Koehl Decl., Ex. 10) would adequately protect any privacy or proprietary interest that Insight Venture has in the non-privileged documents sought by the Subpoena. Both Plaintiffs and Defendants have provided the Protective Order to Insight Venture, and Insight Venture has not expressed any concern at its inadequacy.

Defendants Snail USA and Studio Wildcard lack standing to challenge the Subpoena on any grounds of relevancy or undue burden. *See Universitas Education, LLC v. Nova Group, Inc.*, No. 11 Civ. 1590(LTS)(HBP), 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013). Defendants Snail USA and Studio Wildcard may have standing to challenge the Subpoena only to protect an interest in "a privilege, privacy or proprietary interest in the documents sought," but a mere conclusory allegation that information is private, confidential, and commercially sensitive is insufficient to confer standing. *See id.*; *see also United States ex rel. Ortiz v. Mount Sinai Hospital*, 169 F. Supp. 3d 538, 545 (S.D.N.Y. 2016). Despite ample notice, Defendants also have not objected to Plaintiffs or moved to quash the Subpoena on privilege, privacy, or proprietary interest grounds. Any such objection has therefore been waived—and, even if not waived, the existence of the Protective Order in the underlying litigation (Koehl Decl., Ex. 10) eliminates any such grounds as a basis for standing. *See Ortiz*, 169 F. Supp. 3d at 545 ("Moreover, in this case defendants have consented to the entry of three confidentiality orders, all designed to protect the precise interest they now cite as the basis of their standing . . . . Defendants therefore lack standing to quash the CMS subpoenas.").

## C.    The Florida Court's Protective Order Should Not Bar This Discovery

The July 12, 2022 letter from Defendants' counsel in the present action to counsel for Insight Venture (Koehl Decl., Ex. 7) does not provide a legal basis for Insight Venture to refuse to produce documents in response to a valid subpoena:

> In fact, while nothing in Rule 45 prevents a party from serving objections to a non-party subpoena, such objections, standing alone, have no effect on the non-party's obligation to respond to the subpoena. A party cannot simply object to a subpoena served on a non-party, but rather must move to quash or seek a protective order. Where, as here, the objecting party has not made (much less won) a motion to quash or for a protective order, the subpoena, if otherwise enforceable, remains so, and the non-party ignores its dictates at some peril, including a risk of contempt pursuant to Fed. R. Civ. P. 45(g).

*Ortiz*, 169 F. Supp. 3d at 545 (internal quotation and citation omitted).  Neither Insight Venture nor Defendants has yet sought a protective order against the Subpoena or sought to quash it.

Even if Insight Venture or Defendants were to move to quash the Subpoena on the ground that it seeks documents produced subject to a protective order in the long-closed Florida case, proper application of the four-factor test that courts apply in such situations demonstrates that neither comity nor any invocation of federalism can justify blocking this meaningful and relevant discovery. *See Maale v. Caicos Beach Club Charter, Ltd.*, No. 08-80131-Civ-DIMITROU-LEAS/Snow, 2010 WL 11519360, at *3–4 (S.D. Fla. Jan. 5, 2010) (citing *Tucker v. Ohtsu Tire & Rubber Co.*, 191 F.R.D. 495 (D. Md. 2000)).  Those four factors are: (1) whether a protective order was agreed between the parties or was the product of "a full hearing from opposing counsel," as there is "less need for deference" to "a private agreement entered by the court as a ministerial function"; (2) "the identity of the party from whom discovery is sought"; (3) whether the state case is continuing or closed: "if the state case were still pending, the party seeking discovery could seek to modify the order," while if "the state case is closed, the court should not require the party to go to the expense and time required to file a new case in state court to modify the order"; and (4) whether the court "could incorporate terms, such as special restrictions, from the st[a]te court order into its own order to further the protections of the [state] order." *Id*. (citing *Tucker*, 191 F.R.D. at 501–02).

Applying these four factors to this case compels requiring Insight Venture to produce its documents to Plaintiffs here.  (1) The Florida court protective order appears to have been an agreed protective order, entered into by the court as a ministerial function and invoking statutory Florida confidentiality provisions.  *See* Koehl Decl., Ex. 12. (2) The Subpoena seeks documents from Insight Venture, a non-party to the current litigation (*see* Koehl Decl., Ex. 1). Neither Insight

Venture, nor Defendants, nor Mr. Stieglitz has expressed any concern that the terms of the Protective Order (Koehl Decl., Ex. 10) in the current litigation are inadequate. (3) The Florida litigation has long since concluded, and it would be burdensome to the Plaintiffs, Insight Venture, and other parties to seek to reopen the Florida case to require production of the present documents. (4) As noted above, no party has expressed any concerns that the terms of the Protective Order (Koehl Decl., Ex. 10) underlying this litigation will be inadequate to protect this discovery.

"Returning" the documents to Defendant Studio Wildcard and Mr. Stieglitz, so that they can determine which Insight Venture documents to produce to Plaintiffs, would be a classic case of allowing the fox to guard the chicken house. Third-party discovery of the type sought here is the traditional corrective measure used to resolve inadequacies in party discovery. *See, e.g.*, *Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 60 (S.D.N.Y. 2020) (noting that sanctions for spoliation may be limited to the cost of obtaining those documents from a third party). Even "returning" the documents to Mr. Stieglitz and/or counsel for Defendants would allow them to raise relevance objections that they do not currently have standing to assert. *See Universitas*, 2013 WL 57892, at *5; *Ortiz*, 169 F. Supp. 3d at 545. No good reason exists to give them an opportunity to suppress this evidence.

## IV.    CONCLUSION

For the foregoing reasons, Insight Venture should be ORDERED to produce non-privileged documents in response to Plaintiffs' Subpoena.

Dated: September 7, 2022                              Respectfully submitted,


                                                     By: ___*/s/ Richard M. Koehl*_____
                                                     BLUE PEAK LAW GROUP LLP
                                                     Garland Stephens (GS8464)
                                                       garland@bluepeak.law
                                                     3139 West Holcombe Blvd, PMB 8160
                                                     Houston, TX 77025
                                                     Tel. (281) 972-3036

                                                     Richard Koehl (RK7371)
                                                       richard@bluepeak.law
                                                     P.O. Box 20204
                                                     New York, NY 10001-0006
                                                     Tel. (917) 856-3872